UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF JILLIAN MORRISON, LLC, CHET MORRISON DIVING, LLC, CHET MORRISON CONTRACTORS, INC. AND CHET MORRISON SERVICES, LLC AS OWNER AND/OR OPERATORS OF THE M/V JILLIAN MORRISON PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY<br><br>This document applies to: All cases<br><br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | \* CIVIL ACTION NO: 08-1255 C/W<br>\* 08-1526, 09-2819, 09-3049, 09-4183,<br>\* 09-4184, 09-4213, 09-4253, 09-4263,<br>\* 09-4264, 09-4266, 09-4267, 09-4268,<br>\* 09-4269, 09-4270, 09-4271, 09-4473,<br>\* 09-4474, 09-4475, 09-4514<br>\*<br>\* SECTION "J"<br>\*<br>\* JUDGE CARL J. BARBIER<br>\*<br>\* MAGISTRATE ALMA L. CHASEZ<br>\* |

### MEMORANDUM REGARDING FACTS NOT GENUINELY AT ISSUE

**MAY IT PLEASE THE COURT:**

Petitioners-in-limitation, Jillian Morrison, as owner, Chet Morrison Diving, LLC, Chet Morrison Contractors, Inc. and Chet Morrison Services, LLC, as owner *pro hac vice*, charterer and/or operator of the DSV JILLIAN MORRISON (hereinafter collectively referred to as "Chet Morrison"), respond to the post-hearing brief of the limitation claimants regarding material facts as follows:

On September 15, 2009, this Court correctly denied the motion for summary judgment filed by the limitation claimants, which sought the dismissal of the limitation action commenced by Chet Morrison. Following the hearing, this Court issued an Order, allowing the claimants to

1

address which of the material facts submitted in connection with their motion for summary judgment were genuinely not at issue and to be deemed established for trial. The claimants filed their brief on September 24, 2009.

At the outset, Chet Morrison submits the claimants have tortured the premise of Rule 56(d) and have not established any facts --- other than those facts Chet Morrison has already admitted as true --- for purposes of trial. Most of the claimants' purported uncontested material facts are paragraphs which contain four to five sentences and address several topics. Chet Morrison submits this lack of concise pleading constitutes an abuse of Local Rule 56.1 which calls for a "separate, short and concise statement of material facts." The reason for concise pleading is illustrated in this case because, while Chet Morrison admits some facts in the paragraphs, others are contrary to the evidence.

Further, as mover, claimants bear the initial burden of establishing facts not genuinely at issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). As will be discussed in detail *infra*, the claimants do not provide any citations to the record in support of their facts which they ask the Court to deem established for trial. Because the claimants have failed to meet their initial burden, Chet Morrison has no obligation under Rule 56 to come forward with specific evidence in opposition to each and every fact that the claimants arbitrarily submit is true.

### CHET MORRISON'S RESPONSE TO LIST OF PURPORTED FACTS

1. TransCanada (hereinafter ANR) owned a 12 inch, 7 mile long pipeline located on the sea floor of the Gulf of Mexico, off the coast of Louisiana, that transported natural gas from a BP platform to a Tennessee Gas transmission line.

Chet Morrison denies this statement because the claimants' submissions contain no evidence in support of this statement. Therefore, the claimants have not met their initial burden on this issue.

2. Admitted.

3. ANR ultimately awarded the abandonment project to plaintiffs in limitation, Jillian Morrison, LLC, Chet Morrison Diving, LLC, Chet Morrison Contractors, Inc. and/or Chet Morrison Services, LLC (hereinafter collectively referred to as CMC).

Chet Morrison continues to deny this statement as stated and submits a proper statement is: "TransCanada ANR entered into a contract with Chet Morrison Contractors, Inc., the scope of which is governed by written and verbal agreements between the parties." The claimants admit that the "abandonment project" is defined by written agreements, see purported fact No. 4 *infra*, and there should be no dispute as to the nature and scope of what it entails.

4. CMC's duties and responsibilities for the project were set out in several documents including a Scope(s) of Work, Project Manager's Project Book, Offshore Construction and Installation Agreement, Haz-Op Plan, and El Paso Manuals (hereinafter sometimes collectively referred to as "contracts").

Chet Morrison agrees with the statement in principle; however, a proper statement needs to indicate that the rights and obligations between TransCanada ANR and Chet Morrison could *and were* modified by the parties. See, e.g. deposition testimony of Tom McNamee, pp. 160 and 164, attached as Exhibit "A" to Chet Morrison's memorandum in opposition to motion for summary judgment.

5. Before abandoning the pipeline, CMC had to first remove the hydrocarbon liquids and gasses that remained in the pipeline. To do so, CMC, or one of its subcontractors, would push a pig (plug inserted into the pipe on the platform) through the pipeline with water under high pressure. The pig would stop at the subsea assembly where the ANR line joined the Tennessee Gas line and the gasses and liquids in front of the pig would be pushed into the Tennessee Gas line.

The Court should strike this statement because it violates Rule 56.1 by using a paragraph instead of a "short" and "concise" statement. Further, there is no need to speculate about what "would" happen. Chet Morrison admits that it hired M&J Testing, LLC to push a "pig" through the pipeline with pressurized salt water. However, the claimants do not direct the Court to any evidence in the record to support the other statements, and therefore have not met their initial evidentiary burden on this score. Indeed, the evidence attached to the claimants' motion for summary judgment refutes the foregoing statement as it pertains to gasses and clearly indicates that Chet Morrison shall only "capture all liquids in tank(s)." Exhibit "B," TRANS 00703. Further, there is no evidence in the record that indicates the "pig" was pushed completely through the ANR line where it joined the Tennessee Gas line.

6. Admitted.

7. Even after the pig was pushed through the pipeline, the pipeline still contained various potentially explosive hydrocarbons which contaminated the water to push the pig. (This hydrocarbon contaminated water is hereinafter referred to as "effluent"). Therefore, CMC had to properly capture, and properly dispose of the effluent. To do so, the contracts required CMC to provide, and de-water into, a tank or tanks adequate in size and composition to handle all of the effluent that would be received from the pipeline. CMC was to de-water by connecting one end of a hose to the subsea assembly and the other end would drain into a portable tank or tanks located on the back deck of CMC's dive support vessel, M/V Jillian Morrison (hereinafter M/V Jillian).

The Court should strike this statement because it violates Rule 56.1 by using a paragraph instead of a "short" and "concise" statement. Further, the statement is inconsistent with the claimants' own evidence attached to their motion for summary judgment, and the claimant have failed to meet their evidentiary burden on this score. As stated above, the contracts required Chet Morrison to dispose of "liquids," and there is no mention of the term "effluent" in the contracts. Moreover, there is no evidence that hydrocarbons were present in the discharge line at any time during the process. In fact, Tom McNamee testified that Andy Sievers, Chet

4

Morrison's dive superintendent aboard the M/V JILLIAN MORRISON, stated that "pure water" was in the discharge line. Deposition of Tom McNamee, p.191, attached as Exhibit "A" to Chet Morrison's memorandum in opposition.

8. In addition to providing said tank(s), the contracts also required CMC to provide all equipment necessary to complete the project, including a gas detector (machine used to determine whether potentially explosive gasses are present). A gas detector was required for several reasons, including to detect if any potentially explosive hydrocarbons were coming out of the pipeline and onto the platform or onto CMC's vessel during the de-watering process.

By the claimant's own admission, this is a highly disputed fact. As indicated by the deposition of Tom McNamee and the actions of TransCanada ANR, it is clear that TransCanada ANR agreed to provide *and did provide* a gas detector for the project. Deposition of Tom McNamee, pp. 160 and 164, attached as Exhibit "A" to Chet Morrison's memorandum in opposition. The claimants now attempt to clarify their statement that the *written* contracts required Chet Morrison to provide a gas detector; however, their statement, as written, does not contain that limitation.

9. The contracts also required CMC to seek and to obtain written approval from ANR before it deviated from the contracts including, but not limited to, the aforementioned duties, in any manner.

Again, Chet Morrison submits this is a highly disputed fact and the claimants have misrepresented the facts, law and wording of the agreement between Chet Morrison and TransCanada ANR, including, but not limited to, the duties pertaining to the gas detector. As Chet Morrison stated in its memorandum in opposition, parties are always free to modify contracts orally or by conduct even if the contract states that the parties can only modify the contract in writing. *Taita Chemical Company, Ltd. v. Westlake Styrene Corporation*, 246 F.3d 377, 387 (5th Cir. 2001); see deposition of Tom McNamee, pp. 160 and 164, attached as Exhibit

"A," and deposition of Rickey Richard, pp. 145-46, attached as Exhibit "C," respectively, to Chet Morrison's memorandum in opposition.

10. Tom McNamee was the CMC project manager in charge of the project which he oversaw from his land based office.

Chet Morrison admits that Tom McNamee was its project manager for the project in question. Further, Chet Morrison does not dispute that McNamee did not board the M/V JILLIAN MORRISON during the project. However, Chet Morrison disputes the portion of the statement which incorrectly purports to establish that McNamee was "in charge of the project." As the record reflects, Andy Sievers was Chet Morrison's dive superintendent aboard the M/V JILLIAN MORRISON, and Randy Doiron and Rickey Richard were TransCanada ANR's employed and hired representatives, respectively, aboard the vessel. In addition, vessel captains were aboard the vessels. All of these individuals had supervisory authority in connection with the project and were therefore "in charge." Deposition of Sherman Mack, p. 89, attached as Exhibit "F;" deposition of Tom McNamee, pp. 218-19, attached as Exhibit "A;" and deposition of Kestrel Engineering, LLC, p. 40, attached as Exhibit "B," respectively, to Chet Morrison's memorandum in opposition.

14. Although McNamee was responsible for obtaining tanks capturing **all** of the effluent received on the M/V Jillian, he admitted that he did not know how to calculate the amount of effluent that would de-water from the pipeline onto the M/V Jillian and therefore he was unable to determine the size of the tank or tanks needed for the project. However, instead of asking anyone help him with the calculation, McNamee simply guessed at the amount and, based on his guess, he rented one single tote tank capable of only handling 550 gallons of effluent.

The Court should strike this statement because it is not "short" and "concise" and therefore not in compliance with Local Rule 56.1. In addition, the claimants do not provide any citations to the record and do not meet their initial burden of proof. Significantly, all involved parties, Richard, M&J Testing, LLC, and TransCanada ANR approved the use of a 550 gallon

tote tank for the project. Further, as stated above, the contracts required Chet Morrison to dispose of "liquids," and do not mention the term "effluent."

15. On the fourth day of the project (March 11, 2008), the M/V Jillian began de-watering from the pipeline into the 550 gallon tote tank which was located on its back deck. As the effluent began pouring into the tank, it appeared to those on board, including Sievers, to contain a mixture of water and hydrocarbon gasses. However, since there was no gas detector on board, there was no way for Sievers or the others to accurately determine whether potentially explosive hydrocarbons were in fact coming from the pipeline onto the M/V Jillian.

The Court should strike this paragraph because it is not a "short" and "concise" statement and therefore not in compliance with Local Rule 56.1. In addition, the claimants do not provide any citations to the record to meet their initial burden of proof. Further, the second statement is clearly refuted by the deposition of Tom McNamee who testified that Andy Sievers informed him that "pure water" was in the line. Deposition of Tom McNamee, p. 191, attached as Exhibit "A" to Chet Morrison's memorandum in opposition. The third statement is also factually incorrect because there is no evidence of the presence of hydrocarbons in the discharge line at any time. In sum, the claimants utterly fail to offer any support for their contentions in this paragraph.

The claimants do not address purported fact Nos. 11-13 and 16-20 in their statement of material facts. Accordingly Chet Morrison will not address them at this time.

## CONCLUSION

The Court should strike the claimants' response because they have failed to meet their initial burden under Rule 56. Specifically, their purported facts contain no citations to the record, and most of the purported facts are not "short" and "concise" statements, as required by Local Rule 56.1. Unlike the claimants, Chet Morrison has provided the Court with appropriate citations to the record, which directly contradict the purported facts sought to be established by

the claimants.  Accordingly, the Court should decline to deem any facts established for trial as stated, other than Nos. 2 and 6.

                Respectfully submitted,

                **REICH, ALBUM & PLUNKETT, LLC**

                /s/ ROBERT S. REICH
                **ROBERT S. REICH, T.A. (#11163)**
                **LAWRENCE R. PLUNKETT, JR. (#23869)**
                **JOHN B. ESNARD III (#25664)**
                Two Lakeway Center, Suite 1000
                3850 North Causeway Boulevard
                Metairie, LA  70002
                Telephone:  (504) 830-3999
                Facsimile:  (504) 830-3950
                Email: rreich@rapllclaw.com
                        lplunkett@rapllclaw.com
                        jesnard@rapllclaw.com
                *Attorneys for Jillian Morrison, LLC,*
                *Chet Morrison Diving, LLC, Chet Morrison Contractors,*
                *Inc. and Chet Morrison Services, LLC*

## **CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that a copy of the above and foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are authorized to receive electronic service on this 30th day of September, 2009.

                /s/ ROBERT S. REICH